1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT H. BROWN, ) | No. C 09-1286 CRB (PR) |
| ) | |
| Petitioner, ) | ORDER DENYING |
| ) | PETITION FOR WRIT OF |
| vs. ) | HABEAS CORPUS; |
| ) | DENYING CERTIFICATE OF |
| ROBERT K. WONG, Acting Warden, ) | APPEALABILITY |
| ) | |
| Respondent. ) | |
| _____ ) | |

Petitioner, a state prisoner incarcerated at San Quentin State Prison, has

filed a pro se Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254

challenging the California Board of Parole Hearings' ("BPH") refusal to grant

him parole at his third parole suitability hearing held on October 31, 2007.  Doc.

#1.  On June 25, 2009, the Court issued an Order to Show Cause why the writ

should not be granted.  Doc. #3.  Respondent filed an Answer, Doc. #4, and

Petitioner filed a Traverse.  Doc. #5.

After the matter was submitted, on April 22, 2010, the Ninth Circuit

issued its decision in Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) (en

banc), which addressed important issues relating to federal habeas review of BPH

decisions denying parole to California state prisoners.  On May 4, 2010, the

Court ordered the parties to file supplemental briefing explaining their views of how the <u>Hayward</u> en banc decision applies to the facts presented in Petitioner's challenge to BPH's decision denying him parole.  Doc. #6.  Respondent filed supplemental briefing on June 2, 2010, Doc. #7; Petitioner filed his on June 17, 2010.  Doc. #8.

Having considered all of the papers filed by the parties, the Court DENIES the Petition.

## BACKGROUND

In 1985, Petitioner pled no-contest to first-degree murder in Orange County Superior Court and was sentenced to an indeterminate term of twenty-seven years to life in state prison.  At his third parole suitability hearing held on October 31, 2007, BPH read the following summary of the commitment offense into the record:

> According to the records of the Anaheim Police Department, on April 6, 1985, shortly before 6 a.m., [Petitioner] shot and killed 28-year-old Petro Logovesian [sic] in his apartment, while [Petitioner] was in his apartment in the midst of burglarizing the apartment and had burglarized several apartments earlier that morning.  [Petitioner] was caught as he was coming down the street from the area of the victim's residence when a police officer happened to be on foot patrol.  A second-shot Derringer was found on [Petitioner] with one round fired.  At the time, [Petitioner] was simply arrested for burglary since the officer thought he was the cat burglar who had burglarized that same area on March 23rd 1985, and again on March 30th 1985 between 5 a.m. and 6 a.m.  On this occasion, the officer decided to walk the area during the same time the other burglaries occurred and see if he could catch the burglar.  Later that same date at approximately 5 p.m. officers were called to the bottom-floor apartment below the victim's apartment, as the occupants had just observed blood dripping through the hole in the ceiling and went upstairs and found the victim dead with a gunshot through his head.  One neighbor recalls hearing a sound like a cap gun at approximately 6 a.m. that date.  The victim was found lying by the front door

1    with the door ajar and a bullet wound in his temple.
     There appeared to be signs of a struggle in that the
2    furniture was in disarray, a vase was on the floor and
     a button from the pajama top was on the floor, and
3    the top was torn under the arm.  It should be noted
     that earlier that day just prior to the murder,
4    [Petitioner] had burglarized the residence of Jeff
     Pettit. . . . three videotapes, a wallet, briefcase, and
5    credit cards were taken.  Monique Pearson[,] [another
     burglary victim] . . . in Anaheim told police she woke
6    up to see a man  picking up her purse.  Originally, she
     thought it was simply her husband, but later
7    discovered it was not, and that her front door was
     wide open and the kitchen window screen had been
8    removed.  She then realized her husband was still
     asleep.  This burglary took place on March 30th
9    1985, at 5:55 a.m.

10          On March 23rd, 1985, at approximately 5:50
     a.m., [Petitioner] burglarized [another residence] and
11   took $20.  Apparently, this victim was also awakened
     by noise and saw the suspect in the bedroom with his
12   hands in a dresser drawer.  When [Petitioner]
     observed that the victim had awakened, he ran out of
13   the apartment through the front door breaking a
     chain-type lock in the process.  It should be noted that
14   the television and a VCR were removed.

15          On April 6, 1985, at 6:10 a.m., Jose Cortez
     Cerrato . . . told police he had seen [Petitioner] earlier
16   attempt[ing] to break into his residence.  The victim
     heard a noise outside his bedroom window and saw
17   [Petitioner] attempting to open it.  When asked what
     he was doing, [Petitioner] replied, "I'm looking for
18   dope."  The victim told [Petitioner] to stay away from
     his house and [Petitioner] replied that the victim
19   would "get hurt" if he did not leave him alone.  The
     victim drove to a local donut shop and stated that he
20   planned to report the burglary to police when he saw
     the officer holding [Petitioner] in his patrol unit.  It
21   should be noted that [Petitioner's] fingerprints were
     found at the scene of the burglaries on March 23rd
22   1985 and March 31st 1985.

23   Doc. #4-1 at 34–37.  Petitioner, then twenty-six years-old, admitted at his

24   October 31, 2007 parole suitability hearing that he was committing the burglaries

25   to support his drug habit, which included abusing cocaine, crack cocaine,

26   marijuana and alcohol.  Id. at 37.

27

28                                    3

1    Following this factual summary, BPH conducted the evidentiary portion of

2    the hearing.  At the conclusion of the hearing, BPH found Petitioner was not yet

3    suitable for parole and would pose a current unreasonable risk of danger to

4    society or threat to public safety if released from prison.  Doc. #4-2 at 47.  After

5    he was denied parole, Petitioner filed a petition for writ of habeas corpus in

6    Orange County superior court challenging BPH's decision, which was denied on

7    March 17, 2008.  Doc. #4-3 at 2–10.  The California Court of Appeal summarily

8    denied a petition filed there on June 26, 2008.  Doc. #4-8 at 2.  The California

9    Supreme Court summarily denied a petition filed there on January 29, 2009.

10   Doc. #4-9 at 2–3.  The instant federal Petition for a Writ of Habeas Corpus

11   followed.  Doc. #1.

**DISCUSSION**

12

13   A.    Standard of Review

14         In Hayward, the Ninth Circuit explained the law in California as it relates

15   to parole suitability determinations:

16         The California parole statute provides that the
       Board of Prison Terms "shall set a release date unless
17     it determines that the gravity of the current convicted
       offense or offenses, or the timing and gravity of
18     current or past convicted offense or offenses, is such
       that consideration of the public safety requires a more
19     lengthy period of incarceration for this individual."
       The crucial determinant of whether the prisoner gets
20     parole in California is "consideration of the public
       safety."
21
             In California, when a prisoner receives an
22     indeterminate sentence of fifteen years to life, the
       "indeterminate sentence is in legal effect a sentence
23     for the maximum term, subject only to the
       ameliorative power of the [parole authority] to set a
24     lesser term."  Under the California parole scheme, the
       prisoner has a right to a parole hearing and various
25     procedural guarantees and rights before, at, and after
       the hearing; a right to subsequent hearings at set
26     intervals if the Board of Prison Terms turns him
       down for parole; and a right to a written explanation
27

28                                      4

if the Governor exercises his authority to overturn the Board of Prison Terms' recommendation for parole. Under California law, denial of parole must be supported by "some evidence," but review of the [decision to deny parole] is "extremely deferential."

Hayward, 603 F.3d at 561–62 (footnotes and citations omitted).

The court further explained that:

[s]ubsequent to Hayward's denial of parole, and subsequent to our oral argument in this case, the California Supreme Court established in two decisions, In re Lawrence . . . and In re Shaputis, . . . that as a matter of state law, "some evidence" of future dangerousness is indeed a state sine qua non for denial of parole in California. We delayed our decision in this case so that we could study those decisions and the supplemental briefs by counsel addressing them. As a matter of California law, "the paramount consideration for both the Board [of Prison Terms] and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety." . . . There must be "some evidence" of such a threat, and an aggravated offense "does not, in every case, provide evidence that the inmate is a current threat to public safety." . . . The prisoner's aggravated offense does not establish current dangerousness "unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state" supports the inference of dangerousness. . . . Thus, in California, the offense of conviction may be considered, but the consideration must address the determining factor, "a current threat to public safety."

Hayward, 603 F.3d at 562 (footnotes and citations omitted).

After providing this background on California law as it applies to parole suitability determinations, the court then explained the role of a federal district court charged with reviewing the decision of either BPH or the governor in denying a prisoner parole. According to the Ninth Circuit, this Court must decide whether a decision "rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" Hayward, 603 F.3d at

562–63 (citations omitted); see also Cooke v. Solis, 606 F.3d 1206, 1208, n.2 & 1213 (9th Cir. 2010) (applying Hayward and explicitly rejecting the state's argument that "the constraints imposed by [the Antiterrorism and Effective Death Penalty Act ("AEDPA")]  preclude federal habeas relief" on petitioner's claim; noting that in Hayward, the court "held that due process challenges to California courts' application of the 'some evidence' requirement are cognizable on federal habeas review under AEDPA").

B.    California Law Regarding Parole Suitability Determinations

When assessing whether BPH's suitability determination was supported by "some evidence," this Court's analysis is framed by California's "regulatory, statutory and constitutional provisions that govern parole decisions . . . ." Cooke, 606 F.3d at 1213 (citing In re Rosenkrantz, 29 Cal. 4th 616 (2002)); see Hayward, 603 F.3d at 561–62.  Under California law, prisoners serving indeterminate life sentences, like Petitioner, become eligible for parole after serving minimum terms of confinement required by statute.  In re Dannenberg, 34 Cal. 4th 1061, 1069–70 (2005).  Regardless of the length of the time served, "a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison."  Cal. Code Regs. tit. 15, § 2402(a).  In making this determination, BPH must consider various factors, including the prisoner's social history, past and present mental state, past criminal history, the base and other commitment offenses, including behavior before, during and after the crime, past and present attitude toward the crime and any other information that bears on the prisoner's suitability for release.  See Cal. Code Regs. tit. 15, § 2402(b)–(d).

In considering the commitment offense, BPH must determine whether "the prisoner committed the offense in an especially heinous, atrocious or cruel

manner." Cal. Code Regs. tit. 15, § 2402(c)(1).  The factors to be considered in

making that determination include:  "(A) Multiple victims were attacked, injured

or killed in the same or separate incidents; (B) The offense was carried out in a

dispassionate and calculated manner, such as an execution-style murder; (C) The

victim was abused, defiled or mutilated during or after the offense; (D) The

offense was carried out in a manner which demonstrates an exceptionally callous

disregard for human suffering; (E) The motive for the crime is inexplicable or

very trivial in relation to the offense."  Id.

   According to the California Supreme Court, "the core statutory

determination entrusted to the Board and the Governor [in determining a

prisoner's parole suitability] is whether the inmate poses a current threat to public

safety . . . ."  In re Lawrence, 44 Cal. 4th 1181, 1191 (2008).  And, "the core

determination of 'public safety' under the statute and corresponding regulations

involves an assessment of an inmate's current dangerousness."  Id. at 1205

(emphasis in original) (citing Rosenkrantz, 29 Cal. 4th 616 &  Dannenberg, 34

Cal. 4th 1061).  The court further explained that:

> a parole release decision authorizes the Board (and
> the Governor) to identify and weigh only the factors
> relevant to predicting "whether the inmate will be
> able to live in society without committing additional
> antisocial acts." . . . These factors are designed to
> guide an assessment of the inmate's threat to society,
> if released, and hence could not logically relate to
> anything but the threat currently posed by the inmate.

Lawrence, 44 Cal. 4th at 1205–06 (citations omitted).  The relevant inquiry,

therefore, is:

> whether the circumstances of the commitment
> offense, when considered in light of other facts in the
> record, are such that they continue to be predictive of
> current dangerousness many years after commission
> of the offense.  This inquiry is, by necessity and by
> statutory mandate, an individualized one, and cannot

> be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude.

In re Shaputis, 44 Cal. 4th 1241, 1254–55 (2008).

The evidence of current dangerousness "must have some indicia of reliability." In re Scott, 119 Cal. App. 4th 871, 899 (2004) (Scott I). Indeed, "the 'some evidence' test may be understood as meaning that suitability determinations must have some rational basis in fact." In re Scott, 133 Cal. App. 4th 573, 590, n.6 (2005) (Scott II); see also Cooke, 606 F.3d at 1216 (holding that the state court decision upholding the denial of parole was "'"based on an unreasonable determination of the facts in light of the evidence[],'" Hayward, 603 F.3d at 563 (quoting 28 U.S.C. § 2254(d)(2))," and therefore finding petitioner entitled to habeas relief because "[n]othing in the record supports the state court's finding that there was 'some evidence' in addition to the circumstances of the commitment offense to support the Board's denial of petitioner's parole").

C.      Analysis of Petitioner's Claim

Petitioner claims he is entitled to federal habeas relief because BPH's decision finding him unsuitable for parole was not supported by "some evidence." Doc. ## 1 & 8. After careful review of the law and the evidence, and as set forth below, this Court cannot say that the state court's approval of BPH's decision to deny Petitioner parole was an unreasonable application of the California "some evidence" standard, nor that it was based on an unreasonable

8

determination of the facts in light of the evidence.[1]  See Hayward, 603 F.3d at 563.  Petitioner therefore is not entitled to federal habeas relief.

As an initial matter, the record shows BPH afforded Petitioner and his counsel time to review documents relevant to Petitioner's case and an opportunity to advocate for Petitioner's release and provided them a reasoned decision in denying parole.  Doc. #4-1 at 30–34 ; Doc. #4-2 at 39–46 & 47–58. In that reasoned decision, BPH commended Petitioner for upgrading educationally and vocationally, participating in self-help programming and for maintaining a discipline-free record since 1999, when he was found to be in possession of dangerous contraband.  Doc . #4-2 at 49–50.

The record also shows that BPH relied on several circumstances tending to show unsuitability for parole and that these circumstances formed the basis for its conclusion that Petitioner was not yet suitable for parole and would pose a current unreasonable risk of danger to society or threat to public safety if released from prison.  Doc. #4-2 at 47–58; see Hayward, 603 F.3d at 562; Lawrence, 44 Cal. 4th at 1191, 1205; Cal. Code Regs. tit. 15, § 2402(a) (stating that a prisoner determined to be an unreasonable risk to society shall be denied parole).

First, BPH relied on the circumstances of the commitment offense as well as Petitioner's escalating pattern of criminal conduct in that he had committed a series of burglaries in the days leading up to the burglary and murder.  Doc. #4-2 at 47–48.  Specifically, BPH noted:

> [Petitioner] has a history of violence, assault, prior criminality showing an escalated [sic] pattern of criminal conduct.  [Petitioner has] failed society's previous attempts to correct his behavior . . . beginning at the age of 16 years old, burglary, adult burglary, assault, grand theft on person, and he has

---

[1]    In light of this conclusion, Petitioner's argument that a two-year denial was not supported by "some evidence" necessarily fails as well.

9

1                     suffered probation, county jail and fines.

2                          He also began his substance abuse at the
young age of 8 years old with alcohol and continuing

3               at approximately 12 years old with marijuana, and
then going at 21 years old to cocaine, and continuing

4               on a very heavy cocaine addiction.

5 Doc. #4-2 at 48–49.

6       Next, BPH noted that the July 12, 2007 psychological evaluation "[did]

7 not fully support [Petitioner's] parole" in that the psychologist put Petitioner's

8 risk of recidivism "in the medium range."  Doc. #4-2 at 50.  BPH also found

9 Petitioner's parole plans inadequate in that his primary support system consisted

10 of his brother, Larry Brown, and his friend, Jerry Johnson.  During the

11 evidentiary portion of the hearing, BPH noted that Jerry Johnson, with whom

12 Petitioner planned to live and for whom he planned to work, was "the friend who

13 had [Petitioner] celebrate his 21st birthday by snorting a line of cocaine."  Doc.

14 #4-2 at 19.  When BPH asked Petitioner "what [he thought] about the fact that

15 [Jerry Johnson] was the one that gave [Petitioner his] . . . introduction to cocaine,

16 which [led him] down a terrible path[,]" Petitioner had no answer.  Id. at 21.

17 BPH also noted that Petitioner's brother had recently been imprisoned for grand

18 theft auto and possessing a fraudulent driver's license for purpose of forgery.  Id.

19 at 24.

20       BPH concluded the hearing by recommending that Petitioner remain

21 discipline-free, continue to advance his education, participate in self-help and

22 develop his trades and earn positive chronos.  Doc. #4-2 at 57.  BPH issued

23 Petitioner a two-year denial.  Id.

24       After reviewing the petition filed in superior court challenging BPH's

25 decision to deny Petitioner parole, the court found that the "determination made

26

27

28                                     10

by [BPH] is supported by some evidence in the record."[2]  Doc. #4-3 at 3.

Specifically, the court relied on:  (1)  the circumstances of the commitment

offense; (2) Petitioner's past criminal history and failure to profit from society's

previous attempts to correct his criminality; (3) his long history of abusing

controlled substances, specifically noting that he was high on crack cocaine

during the commitment offense; (4) that the evaluating psychologist was not fully

supportive of Petitioner's parole; and (5) that Petitioner parole plans were

inadequate to conclude that there was "some evidence" to support BPH's finding

that Petitioner presented a current unreasonable risk of danger to society and

therefore was unsuitable for parole.  See Doc. #4-3 at 2–6.

    Based on the entire body of evidence presented at Petitioner's October 31,

2007 parole suitability hearing, the Court cannot say that the state court's

approval of BPH's decision to deny Petitioner parole was an unreasonable

application of the California "some evidence" standard, nor that it was based on

an unreasonable determination of the facts in light of the evidence.  See

Hayward, 603 F.3d at 563; Cal. Code Regs. tit. 15, §§ 2402(b), (c)(1) (heinous,

atrocious and cruel nature of commitment offense demonstrates unsuitability);

(c)(2) (previous record of violence demonstrates unsuitability); (c)(3) (unstable

social history demonstrates unsuitability).  Petitioner therefore is not entitled to

federal habeas relief.

_____

    [2]  Here, the state appellate courts summarily denied Petitioner relief; the
state superior court was the highest state court to address the merits of
Petitioner's claim in a reasoned decision.  It is that decision, therefore, that the
Court analyzes.  See LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000);
Williams v. Rhoades, 354 F.3d 1101, 1106 (9th Cir. 2004) (federal court may
look to any lower state court decision that was examined, and whose reasoning
was adopted, by the highest state court to address the merits of a petitioner's
claim).

//

//

//

//

**CONCLUSION**

For the foregoing reasons, the Petition for a Writ of Habeas Corpus is DENIED.  Further, a certificate of appealability is DENIED.  See Hayward, 603 F.3d at 554–55.  Petitioner has failed to make "a substantial showing of the denial of a constitutional right."  Id. (citing 28 U.S.C. § 2253(c)(2)).  Nor has Petitioner demonstrated that his claim is "debatable among reasonable jurists."  See Hayward, 603 F.3d at 555.

The Clerk of Court shall terminate all pending motions as moot, enter judgment in accordance with this Order and close the file.

IT IS SO ORDERED.

DATED        Sept. 8, 2010                    _____

CHARLES R. BREYER
United States District Judge

12

G:\PRO-SE\CRB\HC.09\Brown-09-1286-bph denial-post hayward.wpd